COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

ERNESTO PENA,                                                )

                                                                              )              No.  08-01-00302-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )               
238th District Court

THE STATE OF TEXAS,                                     )

                                                                              )           
of Midland County, Texas

Appellee.                           )

                                                                              )                 
(TC# CR-26,263)

                                                                              )

 

 

O
P I N I O N

 

Appellant Ernesto
Pena appeals his conviction for the state felony offense of theft, punishable
as a habitual offender.  After finding
Appellant guilty, the jury assessed punishment at 50 years= imprisonment in the Institutional
Division of the Texas Department of Criminal Justice.  On appeal, Appellant challenges the factual
sufficiency of the evidence to support his conviction.  We affirm.

FACTUAL
SUMMARY








In the State=s case-in-chief, Richard Bret Baze testified that on June 19, 2000, he was employed by
Wal-Mart in the store=s
loss prevention department.  Mr. Baze has worked as a loss prevention officer at the
Wal-Mart in Midland County for the past seven years.  Mr. Baze=s duties include investigating customer
shoplifting and internal thefts.  Mr. Baze has received specialized training and on-the-job
training in the area of loss prevention at Wal-Mart.  Mr. Baze stated
that he has apprehended over a thousand shoplifters in Wal-Mart.  In performing his surveillance duties, Mr. Baze walks around the sales floor and observes customer
behavior in the store, dressed like an ordinary customer.








Mr. Baze testified that on June 19, 2000, he apprehended
Appellant and Beatrice Vera for shoplifting a pressure washer.  According to Mr. Baze,
he was walking around the store at that particular time and noticed two
Hispanic females, later identified as Beatrice Vera and her fifteen-year old
daughter, in the automotive department in the aisle where pressure washer and
air compressor merchandise is displayed. 
Mr. Baze observed Ms. Vera and her daughter
pick up a pressure washer and place it into their basket.  They then proceeded to the front of the store
and paid for the item at register 31.  As
Ms. Vera and her daughter went towards the exit door, Mr. Baze approached the cashier and as he passed by, asked the
cashier how they had paid for the item and she told him that they had paid in
cash.  Mr. Baze
followed them as they exited the store and watched them from the sidewalk
outside the store.  Once they were
outside the store, Mr. Baze saw Appellant step
out of the vehicle Ms. Vera and her daughter were heading towards and start
walking towards the store.  Mr. Baze observed Ms. Vera hand Appellant the purchase receipt
for the pressure washer as they passed each other.  Mr. Baze described
their actions as a constant motion, occurring without any conversation between
Appellant and Ms. Vera.  Mr. Baze knew that Ms. Vera had handed Appellant the receipt
for the pressure washer because after Ms. Vera made the purchase she
received her change and the receipt.  Ms.
Vera handed the change to her daughter and the only piece of paper in her hand
was the receipt, which appeared to be what Ms. Vera handed to Appellant.  After seeing this transaction, Mr. Baze decided to follow Appellant when Appellant entered the
Wal-Mart alone.

Once Appellant was inside the store, Mr. Baze
followed him and observed Appellant putting the receipt in his shirt
pocket.  Appellant then selected a basket
and proceeded straight to the pressure washer aisle in the automotive
department.  Mr. Baze
observed Appellant take the receipt out of his pocket, look at it, put the
receipt back in his pocket, and then look down at the pressure washers and air
compressors along the bottom shelf of the aisle.  Appellant grabbed one of the pressure washers
and placed it into the basket.  To Mr. Baze, it looked like Appellant was trying to match the
receipt to the merchandise, but Appellant actually grabbed a different pressure
washer.  Appellant then proceeded toward
the front of the store.  Appellant walked
by the registers towards the bathroom, which is located in the center part of
the front of the store.  Mr. Baze then observed Appellant pass between a couple of
closed registers and enter the men=s
bathroom, leaving the basket outside the bathroom.  After a couple of minutes, Appellant came out
of the bathroom, grabbed the basket, and exited the store.  When Appellant was apprehended, he was on the
sidewalk outside the store building with the pressure washer in his
basket.  Appellant was escorted back into
the store to the back office.








When they arrived
at the office, Appellant told Mr. Baze that he had
the receipt for the merchandise in the basket and handed it to Mr. Baze.  Mr. Baze noticed that the item on the receipt did not match the
item in the basket in price or model. 
Mr. Baze then asked Joe Rael,
an assistant manager, to stay with Appellant while he met with Jim Haley, who
Mr. Baze had pulled aside for backup assistance while
following Appellant in the store.  Mr.
Haley informed him that the vehicle was still in the store parking lot.  Mr. Baze went out
to the vehicle and asked the ladies to exit their vehicle.  He estimated that they had been waiting about
ten minutes since they had given the receipt to Appellant.

The State also
introduced into evidence Ms. Beatrice Vera=s
testimony.  Ms. Vera testified that she
pled nolo contendere and
was convicted of theft for this incident at Wal-Mart.  Ms. Vera admitted to going to Wal-Mart with
her daughter and Appellant that day and purchasing a pressure washer with cash,
however, she denied handing the receipt to Appellant.  According to Ms. Vera, the three entered
Wal-Mart together and then Appellant went his way and she and her daughter went
the other way.  Ms. Vera and her daughter
went looking for the pressure washers. 
Ms. Vera testified that the pressure washer was to be a gift for her
father for Father=s Day because he is in the car washing business.  Ms. Vera=s
daughter was carrying Ms. Vera=s
money and handed it to her to pay for the pressure washer.  After paying for the item, she and her
daughter walked out of the store.  Ms.
Vera did not have any pockets in the shorts she was wearing so she handed the
receipt and her change to her daughter. 
Ms. Vera put the pressure washer in the back seat of the car and waited
outside for Appellant to come out of the store. 
She sat waiting for about ten minutes and then sent her daughter to go
inside the store for Appellant.  Ms. Vera
recalled that after her daughter had been gone for about ten minutes, people
came and got her out of the car and told her to step back inside the
store.  She was subsequently arrested for
theft and taken to the county jail.  Ms.
Vera has known Appellant for seventeen years and has three children with him.








Ms. Vera=s daughter offered similar testimony at
Appellant=s trial,
except she recalled that her mother was holding the money in her bra while they
were inside the store.  Ms. Vera=s daughter testified that she saw her
mother take the money out of her bra at the register and that afterwards her
mother gave her the change and receipt as they walked out of the store.  Then she and her mother went to their car and
waited for Appellant for about five or ten minutes.  Later, she went into the store to look for
him, found him, and handed him the receipt without telling him anything.  The daughter then walked out of the
store.  The daughter  testified that she gave Appellant the receipt
because she has a lot of anger towards him for not letting her do what she
wants to do to stay happy and she was thinking that she would do something to
embarrass him in some way.

At trial,
Appellant testified on his own behalf. 
Appellant was thirty-six years old and was working in oil fields as a
sandblaster.  Appellant stated that on
June 19, 2000, he, his wife, and daughter went to Wal-Mart to buy a gift for
his father-in-law.  They went into the
store together and Appellant went off on his own in
the store.  Appellant
was looking around at everything, browsing the stereo equipment and such, for
about thirty or forty minutes. 
Appellant then headed back towards the front of the store.  He walked through every aisle and noticed the
pressure washers.  Appellant found the
cheapest one and then walked to the front of the store and picked up a
basket.  Appellant then returned to the
pressure washers and put his selection inside the basket.  Appellant started wandering around the store
for about ten minutes, trying to see if he could run into his wife and
daughter.








Around the men=s clothes department, Appellant saw his
daughter coming towards him.  Appellant
recalled his daughter telling him that her mother was outside hot and
frustrated, waiting for them to leave. 
Appellant testified that his daughter told him Awe
already paid for this@
and gave him a receipt.  Appellant saw
that the receipt said pressure washer on it. 
Appellant told his daughter that he would be out in a minute and put the
receipt in his pocket.  Appellant
continued to browse, taking his time because he was not in any hurry.  Appellant wandered around the store and then
decided to go to the restroom to freshen up because they were not going to go
straight home.  After using the restroom,
Appellant got his basket and started to walk towards the front of the store.  Appellant explained that because of his lack
of education, he did not think to ask or explain to the clerk about his wife
and daughter already paying for the pressure washer in his basket.  When Appellant walked out the front doors,
Mr. Baze stopped him and told him to come back
inside the store and talk about what he had in the basket.  Once back inside the store, Appellant denied
stealing the pressure washer and told Mr. Baze he had
a receipt for it.

On
cross-examination, Appellant was questioned about his criminal history
record.  Appellant admitted that he had
been convicted for theft in 1990 and 1991. 
Appellant also admitted to three additional felonies.  In 1994, Appellant was convicted of
aggravated assault with a deadly weapon finding for which he served four years
imprisonment.  In 1989, Appellant was
convicted of burglary of a vehicle for which he served one year and eight
months imprisonment.  In 1985, Appellant
was convicted of felony criminal mischief for which he served about one year
imprisonment after probation was withdrawn in 1985.  At the close of the guilt/innocence stage of
Appellant=s trial,
the jury found him guilty of theft by repetition, which is theft enhanced to a
state jail felony.  Appellant pled true
to his prior convictions for at least two felonies.  The jury assessed his sentence at fifty years= confinement.  Appellant now timely
appeals.

DISCUSSION








In his sole issue,
Appellant contends that the evidence was factually insufficient to sustain his
conviction for the offense of theft by repetition.  Specifically, Appellant argues that the
conviction is against the weight of the evidence such that it is clearly wrong
and unjust.  

Standard
of Review 








A factual
sufficiency review of the evidence begins with the presumption that the
evidence was legally sufficient to support the trial court=s judgment.[1]  See Clewis v.
State, 922 S.W.2d 126, 134 (Tex.Crim.App.
1996).  In reviewing a factual
sufficiency of the evidence challenge, we consider all of the evidence in a
neutral light.  Johnson
v. State, 23 S.W.3d 1, 7 (Tex.Crim.App. 2000); Clewis, 922 S.W.2d at 129.  The evidence is not factually sufficient if
it is so weak that it would be clearly wrong and manifestly unjust to allow the
verdict to stand, or the adverse finding is against the great weight and
preponderance of the available evidence. 
Johnson, 23 S.W.3d at 11.  We review the evidence weighed by the jury
that tends to prove the existence of the elemental fact in dispute and compare
it with the evidence that tends to disprove that fact.  Jones v. State, 944 S.W.2d 642, 647 (Tex.Crim.App. 1996), cert. denied, 522 U.S. 832, 118
S.Ct. 100, 139 L.Ed.2d 54 (1997).  Our review must employ appropriate deference
and should not intrude upon the fact finder=s
role as the sole judge of the weight and credibility given to any evidence
presented at trial.  See Johnson,
23 S.W.3d at 7; Clewis, 922
S.W.2d at 134.  A decision is not
manifestly unjust merely because the jury resolved conflicts in the evidence in
favor of the State.  Cain
v. State, 958 S.W.2d 404, 410 (Tex.Crim.App.
1997).

In challenging the
factual sufficiency of the evidence, Appellant argues that there was
conflicting testimony at trial. 
Appellant points out that the State=s
witness, Mr. Baze, testified that Appellant was not
in the store when Ms. Vera and her daughter exited the store.  However, Appellant, Ms. Vera, and their
daughter testified that they entered the store together.  Further, there was evidence introduced as to
Appellant=s
confusion and misunderstanding concerning the receipt, which showed that
Appellant thought Ms. Vera had already paid for the pressure washer in his
basket.

The participants
in the alleged theft did offer testimony that conflicted with Mr. Baze=s
account of the incident.  The jury as
fact finder and sole judge of witness credibility, however, was free to resolve
the conflicting testimony in favor of the State.  See Cain, 958 S.W.2d
at 410.  We have examined all the
evidence impartially, and giving due deference to the jury=s verdict, we find that the proof of
guilt is not so obviously weak as to undermine confidence in the jury=s determination.  See Jones, 944
S.W.2d at 648-49.  Further, the
great weight and preponderance of the evidence is not contrary to the jury=s verdict.  While Appellant testified as to his
misunderstanding, this evidence did not outweigh other evidence adduced at
trial regarding his intent.  Accordingly,
we find that the evidence is factually sufficient to support the
conviction.  Issue One is overruled.

 








For the reasons
stated above, we affirm the trial court=s
judgment.

 

 

April
24, 2003

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 3

Barajas, C.J., Larsen, and Chew, JJ.

 

(Do Not Publish)











[1]
Here, Appellant was indicted for theft by repetition, which is, theft enhanced
to a third degree state jail felony.  A
person commits theft Aif
he unlawfully appropriates property with intent to deprive the owner of
property.@  Tex.Pen.Code
Ann. ' 31.03(a)(Vernon 2003).  AA person acts intentionally, or with
intent, with respect to the nature of his conduct or to a result of his conduct
when it is his conscious objective or desire to engage in the conduct or cause
the result.@  Tex.Pen.Code
Ann. ' 6.03(a)(Vernon 2003). 
Intent can be inferred from the accused=s
acts, words, or conduct.  Dues v. State, 634 S.W.2d 304, 305 (Tex.Crim.App.
1982).  Theft is punishable as a
state jail felony if the value of the property is less than $1,500 and the
person has been previously convicted two or more times of any grade of
theft.  Tex.Pen.Code Ann. ' 31.03(e)(4)(D).  The prior
convictions constitute elements of the offense, rather than enhancement
allegations.  See Henry v. State, 948 S.W.2d 338, 341 (Tex.App.--Dallas
1997, no pet.).  Appellant=s offense was an aggravated state jail
felony punishable under Section 12.35(c), not Section 12.35(a), because he pled
true to an enhancement paragraph for aggravated assault.  He also pled true to enhancement paragraphs
for two earlier felony convictions. 
Thus, his punishment range was increased to the range applicable to an habitual offender under Section 12.42(d).  See Tex.Pen.Code Ann. ''
12.35(c)(2)(B), 12.42(d).  We observe that on appeal, Appellant does not
challenge the severity of the sentence imposed.